In the Matter of the Guardianship of Lillian
B. FAULKNER, Incompetent.

Jack C. ZOLNOSKI, Appellant
(Contestant below),

v.

J. F. SOEST, Appellee (Guardian below).

No. 3906.

Supreme Court of Wyoming.

Aug. 13, 1971.

Ellen Crowley, Cheyenne, for appellant.

Walter C. Urbigkit, Jr., of McClintock, Mai & Urbigkit, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an appeal from an order of the district court authorizing the transfer of the assets of a Wyoming guardianship to

the Kansas guardian, and the closing of the Wyoming guardianship.

Lillian B. Faulkner, the aunt of both appellant and appellee, lived for more than 40 years in Casper, Wyoming with the parents of appellant. In 1959, after the death of appellant's father, his mother (who was Lillian Faulkner's sister), and Lillian Faulkner moved to Cheyenne where they lived with appellant and his family. In 1962 Miss Faulkner went to California and stayed with another sister (appellee's mother). She returned to Cheyenne several times during the Christmas holidays and stayed with appellant and his family. In 1967, apparently through the efforts of appellee, Miss Faulkner and her sister moved to Wichita, Kansas, which is the home of appellee, and took up quarters in a nursing home where they continue to live.

On June 13, 1967, appellee petitioned the probate court of Sedgwick County, Kansas for the appointment of a guardian and conservator for Lillian Faulkner. Appellant was notified of appellee's action, and, on June 23, 1967, the Kansas court issued to appellee letters of guardianship and conservatorship.

On August 7, 1967, appellee filed his petition for appointment of guardian in the district court of Laramie County, Wyoming. Appellant appeared to have no notice of this petition. On September 19, 1967, letters of guardianship were issued to appellee as petitioner. On October 3, 1967, appellant filed in the Laramie County, Wyoming district court a petition to revoke the letters of guardianship of the appellee and to appoint a new guardian. The district court, on January 9, 1969, entered its order denying the petition for removal, from which order no appeal was taken.

The record does not show the date, but appellant had filed in the Kansas court a petition praying for the removal of appellee as guardian and conservator of Miss Faulkner's estate and for the appointment of himself as conservator. On July 17, 1968,

the Kansas court denied the petition and ordered that appellee remain as conservator and guardian. Apparently, no appeal was taken from that order.

On May 29, 1969, appellee filed a petition to terminate the Wyoming guardianship and transfer the assets to the Kansas guardianship. On June 17, 1969, appellant filed an answer and objection to transfer of assets from Wyoming. Upon hearing of the matter the district court, on May 13, 1970, entered its order finding that appellee's petition should be granted and ordered that the guardian file a final accounting and close the Wyoming guardianship by transferring responsibility for accounting of the assets to the existent Kansas guardianship. Appellant filed his notice of appeal from this order.

Appellant in his brief raised several points on which he relied for reversal. During oral argument it was conceded that certain of the necessary elements for the appointment of a guardian, i. e., incompetency of the ward, property in the state for which a guardian was needed, had been previously determined and are res judicata. He, however, argued that the one issue not resolved was the residency of the ward. While it appears that appellant is precluded from raising the question of residency because the question was or should have been raised and determined in his action to revoke the letters of guardianship from which no appeal was taken, we need not make such determination because, as hereinafter set forth, the question of residency of the ward is not pertinent.

 In his brief appellant argued that under both § 3–2, W.S.1957, and § 3–29.1, W.S.1957 (1971 Cum.Supp.), it is incumbent upon the district court to determine the residency of the ward. Both statutes provide that the district court of each county may appoint a guardian for the person and estate, or either of them, of incompetent persons who reside or have estates within the county. We believe the language of the statutes is clear and the district court has authority to appoint a

guardian for an incompetent person having an estate within the county regardless of the residency of the ward. Unless it is sought to have a guardian appointed for the person of the ward, neither statute requires a determination of the residency of the ward.

The sole contention then of appellant for consideration by this court, is that the trial court did not have authority to terminate the Wyoming guardianship, or, if such authority existed, the record did not justify the termination and removal of assets.

It appears that the Wyoming guardianship was established pursuant to §§ 3–29.1 through 3–29.15. This act was adopted by the legislature in 1965, and § 3–29.1 provides that, "The district court of each county, * * * may appoint a guardian for the person and estate, or either of them, of mentally incompetent or incompetent persons who reside or have estates within the county, * * *" This act superseded and repealed certain previous statutory provisions for the handling of the affairs of persons incapable of handling their own affairs.

This act makes no provisions for the termination or closing of a guardianship under the circumstances present in the case at hand. This act (§ 3–29.8) does provide that guardians appointed pursuant to this act shall be governed by the statutes of this state applicable to guardians and wards, except as may be otherwise provided therein.

Appellant argued that the applicable statutes were §§ 3–52 through 3–58, and that this is the exclusive method for the appointment of and termination of a guardian for a person who resides outside the state but has property within the state. He further argued that the guardianship could not be established under these provisions because the ward was and is a resident of Wyoming, and, thus, the district court had no jurisdiction under the nonresident statutes. We need not make any determination as to the residency of the ward because it is clear that the district court had authority to appoint a guardian for the estate of the ward under § 3–29.1.

No contention is made that the ward did not need a guardian, and it is abundantly clear from the record that the ward—who was born May 21, 1882—due to her physical and mental condition, is incapable of handling her own affairs.

Since the act (§ 3–29.1) makes no provision for termination, we must look to the general guardianship statutes. All of the statutory provisions relating to guardians and wards must be correlated and harmonized, if possible, with the legislative intent of the latest enactment. In re Kosmicki, Wyo., 468 P.2d 818, 821. Our general statutes on guardians (Laws 1890–91, ch. 70) were enacted by the first state legislature convened at Cheyenne, Wyoming on the 12th day of November, 1890, as part of the "Probate Procedure." The "guardian and ward" provisions commenced with ch. 70, art. XXI. The present § 3–15 was enacted as art. XXVI, § 3, as part of the "General and Miscellaneous Provisions" of that act, and was the last article in the act dealing with procedural matters. Section 3–15 provides:

"* * * and the guardian of an insane or other person may be discharged by the court or judge when it appears, on the application of the ward or otherwise, that the guardianship is no longer necessary."

It is thus clear that by § 3–29.8, § 3–15 applies and the trial court was thereby instituted with authority to terminate and discharge the guardian if it appeared that the guardianship was no longer necessary.

We must then consider if there was any necessity for the continuance of the guardianship of the ward's property in this state. No doubt a guardianship was necessary in order to collect and marshal the assets of the ward. But with the assets collected the necessity of the guardianship ceased for all practical purposes, except that the Wyoming guardian from time to time may have had to forward funds to the Kansas guardian for the benefit of the

ward living in Kansas. There was no showing or even an allegation by the appellant that the assets could be invested or dealt with to better advantage here in Wyoming than in Kansas. There is no presumption that the assets remaining here would be of any benefit to the ward. On the contrary, it seems to us it would be a detriment to have the ward's estate bear the expenses and attendant administrative responsibility of two guardianships. The Kansas guardian was adequately bonded to cover the assets located in both Kansas and Wyoming, and we therefore fail to see how there could be any danger in this regard.

We think the district court had the authority to close the Wyoming guardianship, and there appears to have been adequate reason for its having determined that the Wyoming guardianship was no longer necessary.

The order of the trial court is affirmed.